# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID LOWE and DEBBIE LOWE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 13-4075-JAR |
| POSTROCK MIDCONTINENT | ) |
| PRODUCTION LLC, CLARK | ) |
| EDWARDS, JAY KINGERY, and | ) |
| JEFF MORRIS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter was removed from Wilson County, Kansas District Court on July 12, 2013. The Notice of Removal asserts diversity jurisdiction, alleging that the individual Defendants, who are all Kansas citizens, were fraudulently joined. Before the Court is Plaintiffs' Motion to Remand (Doc. 14), in which Plaintiffs argue that the doctrine of fraudulent joinder does not apply here, thus destroying diversity jurisdiction. The motion is fully briefed and the Court is prepared to rule. As described more fully below, the motion to remand is granted.

## I. Background

Plaintiffs filed their state court Petition on April 1, 2013, alleging claims for unpaid royalties on oil and gas leases between themselves and PostRock MidContinent Production LLC ("PostRock"). The Petition further alleges that Defendants diverted or transferred oil produced from Plaintiffs' leaseholds to other locations without payment. The Petition alleges that during the relevant time period, Defendants Clark Edwards, Jay Kingery, and Jeff Morris were acting within the scope and course of their employment for PostRock. PostRock is Delaware limited

liability corporation. The individual Defendants are all Kansas citizens. Plaintiffs are both Kansas citizens.

Plaintiffs allege five counts of relief in the Petition. Count I is a conversion claim against all Defendants, claiming that they diverted oil produced from Plaintiffs' leaseholds to other locations without payment or credit and that they converted the oil and oil proceeds to Defendants' own use and benefit. Count II is for breach of lease against PostRock, claiming PostRock breached the terms of several leases by failing to credit or deliver payment to Plaintiffs for their full share of oil produced from the wells on their leaseholds, and by causing Plaintiffs to receive inaccurate royalty payments by understating the volume of oil actually produced. Count III alleges misrepresentation and concealment against all Defendants, claiming the volume of oil produced from the leaseholds was falsely understated and reported to Plaintiffs and to the State of Kansas. Count IV alleges unjust enrichment against all Defendants based on Defendants' receipt and retention of oil proceeds at Plaintiffs' expense. Finally, in Count V, Plaintiffs allege an accounting claim against Defendant PostRock of all oil produced from Plaintiffs' wells and the proceeds thereof.

Defendants filed their Notice of Removal on July 12, 2013. The Notice of Removal alleges that this Court may exercise diversity jurisdiction because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. Defendants allege that the Court should disregard the individual Defendants' citizenship for purposes of jurisdiction under the doctrine of fraudulent joinder. They allege that Plaintiffs cannot prevail on any of the claims alleged against the individual Defendants because the claims against these Defendants are all tort claims subsumed and precluded by the breach of contract claim against PostRock.

2

Six days after removal, Defendants moved to dismiss all non-contract claims and all individual Defendants from the original Petition.[1] In that motion, Defendants argued that the non-contract claims were all subsumed and precluded by the breach of contract claim against PostRock, and that the claims against the individual Defendants could not lie because they were not signatories to the subject leases, which govern this dispute. On August 2, 2013, Plaintiffs filed a First Amended Petition, withdrawing Defendant Edwards as a party, adding factual detail to the claims, and clarifying which claims are asserted against which specific Defendants. On August 12, 2013, Plaintiffs filed a timely motion to remand for lack of complete diversity.

## II. Standard

Federal courts are required to remand a case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[2] To avoid remand, a defendant must show that the action satisfies the requirements for federal jurisdiction.[3] Because federal courts "are courts of limited jurisdiction, there is a presumption against federal jurisdiction."[4] Therefore, courts must resolve doubtful cases in favor of remand.[5] Defendants bear the burden of proving facts sufficient to establish jurisdiction.[6]

Remand is improper if the defendant properly removed a case to federal court that the

---

[1] Doc. 4.

[2] 28 U.S.C. § 1447(c).

[3] *See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.").

[4] *Frederick & Warinner v. Lundgren*, 962 F. Supp. 1580, 1582 (D. Kan. 1997) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

[5] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[6] *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008); *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

plaintiff could have originally filed in federal court.[7] Federal courts are courts of limited jurisdiction, and as such they must have a statutory or constitutional basis to exercise jurisdiction over any controversy.[8] Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exists. Removal jurisdiction over diversity cases is more limited than jurisdiction over diversity cases originally brought in federal court because removal based on diversity is available only if none of the defendants is a citizen of the state in which the action is brought.[9]

"The courts must rigorously enforce Congress' intent to restrict federal jurisdiction in controversies between citizens of different states."[10] The presumption is thus against removal jurisdiction,[11] and courts must refrain from exercising jurisdiction in all cases where such jurisdiction does not affirmatively appear on the record.[12] Statutes conferring both diversity and removal jurisdiction are to be strictly construed, and "[d]oubtful cases must be resolved in favor

---

[7] *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[8] *Montoya*, 296 F.3d at 955; *see also United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (internal quotation omitted)).

[9] 28 U.S.C. § 1441(b).

[10] *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1339 (10th Cir. 1998) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)).

[11] *Frederick & Warinner v. Lungren*, 962 F. Supp. 1580, 1582 (D. Kan. 1997) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

[12] *Ins. Corp of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

of remand."[13]

It has long been held that the right of removal cannot be defeated by "a fraudulent joinder of a resident defendant having no real connection with the controversy."[14] Fraudulent joinder is a term of art; it does not reflect on the integrity of the plaintiff or counsel, but exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant.[15] The removing defendant's burden of proving fraudulent joinder is not unlike the burden of proving any claim of fraud.[16] "[U]pon specific allegations of fraudulent joinder, the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available."[17] If fraudulent joinder applies, it permits the Court to disregard for jurisdictional purposes the citizenship of fraudulently joined defendants, assume jurisdiction, and dismiss the nondiverse defendants.[18]

**III. Discussion**

The Tenth Circuit addressed fraudulent joinder claims in *Montano v. Allstate Indemnity*,[19] stating:

> "To prove their allegation of fraudulent joinder [the removing

---

[13]*Thurkill v. Menninger Clinic, Inc.*, 72 F. Supp. 2d 1232, 1234 (D. Kan. 1999) (citing *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995)).

[14]*Cooper v. Zimmer Holdings, Inc.*, 320 F. Supp. 2d 1154, 1156–57 (D. Kan. 2004) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

[15]*Id.* (citation omitted).

[16]*McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956).

[17]*City of Neodesha, Kan. v. BP Corp. N. Am. Inc.*, 355 F. Supp. 2d 1182, 1185 (D. Kan. 2005) (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted)).

[18]*Kan. State Univ. v. Prince*, 673 F. Supp. 2d 1287, 1294 (D. Kan. 2009)*,*

[19]211 F.3d 1278 (table), 2000 WL 525592 (10th Cir. Apr. 14, 2000).

parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned." This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced. Finally, as the reference to "a cause of action" in the quoted passage reflects remand is required if any one of the claims against the non-diverse defendant . . . is possibly viable. [20]

Therefore, the Court must determine whether Defendants have demonstrated no possibility that Plaintiffs could recover against the individual Defendants. The Court's analysis of this issue is confined to the Original Petition because removal is judged "on the complaint as it stands at the time of removal."[21]

### A. Tort Claims in Count I and III

Defendants argue that there is no possibility of a viable tort claim in this case based on the principle that "the existence of a contractual relationship bars the assertion of tort claims covering the same subject matter governed by the contract. . . . Stated another way, tort duties may not be imposed on a party where *the party's* duties and rights are specifically defined by contract."[22] When parties contemplate a remedy in the event of a breach of contract, the

---

[20] *Id.* at *1–2 (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)) (citations omitted).

[21] *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991). In applying this rule, the Court does not find that Plaintiffs amended the Petition in order to destroy federal jurisdiction. To be sure, the Amended Petition continues to assert the same claims for relief against two of the three individual nondiverse Defendants. Even if the Court considered it, the amended pleading does not change the analysis on fraudulent joinder.

[22] *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 241 F. Supp. 2d 1123, 1151–52 (D. Kan. 2002) (citing *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1145, 1461 (D. Kan. 1995)) (emphasis added).

bargained-for existence of a contractual remedy displaces the imposition of tort duties and default consequences.[23] Nevertheless, a party may be liable in tort for breaching an independent duty toward another, even where the relationship creating such a duty originates in the parties' contract.[24] One such duty is the general tort duty to refrain from misrepresentation of material present or preexisting facts.[25]

> [T]he key difference is whether the contract calls for a specific result. When the contract does not call for the specific result at issue, the action is more in the nature of a violation of a duty imposed by law instead of failure to perform a duty arising by reason of agreement. In such a case, the plaintiff's complaint is not that the defendant failed to perform the contract, but that the defendant failed to perform it with due care.[26]

Under Kansas law, a contract and tort action may arise out of the same set of facts.[27] "When the same conduct could satisfy the elements of both a breach of contract or of an independent tort, unless the conduct is permitted by the express provisions of a contract, a plaintiff may pursue both remedies."[28]

According to the Petition, the leases at issue in this case are between PostRock and

---

[23] *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, 277 F. Supp. 2d 1120, 1129–30 (D. Kan. 2003).

[24] *Id.* at 1130.

[25] *Graphic Techs, Inc. v. Pitney Bowes Inc.*, 998 F. Supp. 1174, 1179 (D. Kan. 1998).

[26] *Clark v. Assocs. Comm. Corp.*, 149 F.R.D. 629, 636 (D. Kan. 1993) (quoting *Hunt v. KMG Main Hurdman*, 839 P.2d 45, syl. ¶ 4 (Kan. Ct. App. 1992)); *see also Fed. Kemper Life Assurance Co. v. Ellis*, 28 F.3d 1033, 1042 n.10 (10th Cir. 1994); *Brady v. United States*, No. 96-1106-MLB, 1997 WL 321300, at *1 (D. Kan. Apr. 8, 1997).

[27] *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 146 (Kan. 2003); *Bittel v. Farm Credit Servs. of Cent. Kan.*, 962 P.2d 491, 497–98 (Kan. 1988); *see also Shields v. U.S. Bank Nat'l Assn. N.D.*, No. 05-2073-CM, 2005 WL 3335099, at *2 (D. Kan. Dec. 7, 2005).

[28] *Bittel*, 962 P.2d at 498.

Plaintiffs. The individual Defendants are not successors to the lessees.[29] But the Petition alleges that the individual Defendants were acting within the scope and course of their employment and on behalf of PostRock. Defendants argue Plaintiffs' claims against the individual Defendants are limited to a respondeat superior theory of liability—that they acted solely as agents of and on behalf of PostRock. Plaintiffs contend that the Petition does not preclude them from stating a claim against the individual Defendants based on their personal involvement in the alleged torts.

The Petition itself states that the individual Defendants were acting at all relevant times within the scope and course of their employment. But the Court may pierce the pleadings in determining fraudulent joinder, and Plaintiffs submitted some evidence regarding Defendants Morris and Kingery's involvement in the allegedly tortious acts. Plaintiff David Lowe attests by affidavit that in September 2012, he overheard Morris tell Kingery that Morris had treated the oil in the South Follmer battery tank, a tank near Lowe's property that had not produced oil for several years. Morris told Kingery that the South Follmer oil was ready for sale. Eddie Henley, Lowe's neighbor, also submitted an affidavit stating that the South Follmer tank is next to his property and that in September 2012, he saw Kingery operating a skid steer loader near the South Follmer battery tank and that Kingery told him that the oil in the tank belonged to Lowe. Therefore, Plaintiffs have produced evidence that Kingery had knowledge that the oil he was treating and producing for sale belonged to Lowe and not PostRock. And the evidence shows that Morris and Kingery personally participated in treating and selling the oil that Plaintiffs allege originated on their property.

The question is whether the allegations against the individual Defendants on each of the

---

[29]Whether this doctrine is properly applied to PostRock is not at issue on this motion. Defendants raised that issue in moving to dismiss the original Petition, but that motion is now moot in light of the Amended Petition.

tort claims are based on an independent duty owed by them, apart from the duty owed by PostRock under the leases.[30] In Kansas, it is settled that an officer or agent of a corporation who violates a duty owed to a third person is liable for breach of that duty.[31] In the context of conversion, to be liable, the agent "must participate or have knowledge amounting to an acquiescence or commit a breach of duty he owes to the owner of the property before he will be held liable."[32] The evidence demonstrates that Kingery and Morris personally participated in the conversion and that Kingery had knowledge amounting to an acquiescence. Under these circumstances, the Court cannot conclude that Plaintiffs could not possibly recover against these Defendants on the conversion claim.

In the context of Plaintiffs' misrepresentation claim, the duty must arise from the general tort duty to refrain from misrepresentation of material present or preexisting facts in order to be independent.[33] If a misrepresentation claim is predicated on a contractual representation regarding future occurrences, the claim necessarily relies on a contractually created duty.[34] The misrepresentation alleged in the Original Petition is that the oil produced from the leaseholds was falsely reported to Plaintiffs and the State of Kansas. This alleged misrepresentation concerns a material present fact. As to the agency issue, it does not matter whether the agent's tort also attaches to the corporation because "the tort liability of the agent is not based on the

---

[30] *Hensley v. Orscheln Farm & Home, LLC*, No. 11-4159-CM-GLR, 2012 WL 628201, at *4 (D. Kan. Feb. 27, 2012).

[31] *See McFeeters v. Renollet*, 500 P.2d 158, 161 (Kan. 1972).

[32] *Speer v. Dighton Grain, Inc.*, 624 P.2d 952, 959 (Kan. 1981).

[33] *Graphic Techs, Inc. v. Pitney Bowes Inc.*, 998 F. Supp. 1174, 1180 (D. Kan. 1998).

[34] *Id.* at 1179.

contractual relationship between the principal and agent, but on the common law obligation that every person must so act or use that which he controls as not to injure another."[35] Given this standard, the Court cannot conclude that there is no possibility that Plaintiffs could recover against Morris and Kingery for misrepresentation under Kansas law. To the extent Plaintiffs state a claim for fraud against Morris and Kingery, it is possible under Kansas law that they would be individually liable.[36]

Construing the disputed facts and all factual and legal ambiguities in favor of Plaintiffs, the Court determines that they could possibly recover on the tort claims against the individual Defendants.

### B.     Unjust Enrichment in Count IV

Generally, an unjust enrichment claim must be dismissed where a written contract exists that governs the claim.[37] "Kansas law is clear that quasi-contractual remedies, such as unjust enrichment, 'are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue.'"[38] "Moreover, 'courts applying Kansas law have concluded that quantum meruit and restitution are not available theories of recovery when a valid, written contract addressing the issue exists.'"[39] Such theories, however, may be available

---

[35]*Bajaj v. Pal/Med Servs, Inc.*, No. Civ. A 97-1188-WEB, 1999 WL 1253059, at *2 (D. Kan. Dec. 3, 1999) (quoting *McFeeters*, 500 P.2d at 50).

[36]The Court makes no finding as to the sufficiency of the fraud allegations. As set forth above, the standard on fraudulent joinder is not the same as determining whether the claim is sufficient under Rule 12(b)(6) or Rule 9.

[37]*See Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, No. 01-2243-CM, 2004 WL 1900584, at *2 (D. Kan. June 8, 2004).

[38]*Id.* at *2 (citing *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co.*, 130 F.3d 950, 957 (10th Cir. 1997)).

[39]*Id.* (quoting *Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996)).

10

if the contract is void, unenforceable, rescinded, or waived by the party seeking to recover.[40] Here, while there are express contracts that govern the relations between PostRock and Plaintiffs, to the extent the individual Defendants received and retained benefits of the oil or oil proceeds, it is possible for Plaintiffs to assert an unjust enrichment claim against them because they are not parties to the subject leases. Again, the Court does not pass on the merits of such a claim, but finds for purposes of the fraudulent joinder analysis, Defendants have not met their burden of showing no possibility that Plaintiffs could recover.

Because at least one of the claims asserted against the individual Defendants in the original Petition is possibly viable, the Court does not apply the doctrine of fraudulent joinder. Thus, since the individual Defendants are citizens of Kansas, the Court may not exercise removal jurisdiction based on diversity of the parties and must remand this action to state court.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Remand (Doc. 14) is **granted**. The Clerk of the Court is directed to remand this case to the District Court of Wilson County, Kansas.

**IT IS FURTHER ORDERED** that the Court lacks jurisdiction to decide Defendants' motion to dismiss (Doc. 4).

**IT IS SO ORDERED.**

Dated: November 11, 2013

                                       S/ Julie A. Robinson
                                       JULIE A. ROBINSON
                                       UNITED STATES DISTRICT JUDGE

---

[40] *Id.*